# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JAMES A. HOLLIDAY                                                                                    PETITIONER
ADC #144378

V.                                              5:15CV00004-BRW-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                          RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

1

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

**DISPOSITION**

**I.    BACKGROUND**

A Benton County Circuit Court jury found Petitioner, Mr. James Holliday, guilty of one count of sexual assault in the second degree and one count of rape. (Doc. No. 9-1.) He was convicted of sexual assault of his great-great[1] niece, K.H., and rape of his granddaughter, F.H. He was sentenced to a total of 720 months' imprisonment, 240 months for sexual assault and 480 months for rape to run consecutively.[2] (*Id.*) Mr. Holliday appealed the conviction, arguing the trial court erred by refusing to allow testimony regarding F.H.'s truthfulness. The Arkansas Court of Appeals affirmed but did not address the merits "because the substance of the expected testimony is not apparent from the context and there was no proffer." *Holliday v. State*, 2010 Ark. App. 705 *2 (2010). The Court of Appeals recited the underlying facts of the rape as follows:

> The victim, who was a teenager at the time of trial, testified that she and her sister were taken in by their grandparents when she was six years old because of instabilities in her mother's life. Because the children were at first afraid in their new surroundings, they slept with their grandparents for a time - she with her grandfather, her sister with her grandmother, each in separate rooms. The victim stated that,

---

[1] K.H. says Mr. Holliday is her great-uncle; the prosecutors call her his great-great niece.

[2] When deciding to run the sentences consecutively, the trial court judge said she was "convinced that this . . . sexual abuse of children has occurred for decades . . ." (Doc. No. 28 at 510.)

2

during that time, her grandfather touched her inappropriately on her legs and thighs, rolled her over, had her kiss his penis through his underwear, and ultimately had vaginal intercourse with her. Her grandfather told her that this was to be their secret. After several months, the girls began sleeping together in their own room and there was no further abuse. The memory of the abuse revived when the victim was in high school and she reported it to a staff member at her high school. The victim admitted that she recanted her story more than once when asked by investigators to repeat it in the presence of her grandfather and that, although she had frequently lied in the past, she was now telling the truth.

*Holliday v. State*, 2010 Ark. App. 705 *1-2 (2010).

The underlying facts of the sexual assault arose from a surveillance video in a Harps grocery store. (Doc. No. 28[3] at 260.) Don Harris, the manager of the Harps had been looking for someone on the surveillance tape when he noticed Mr. Holliday and K.H. standing by a claw machine. (*Id.* at 247.) In shock and disbelief, Mr. Harris called his boss to see, "if he was seeing the same thing [Mr. Harris] was seeing. [The boss] saw the same thing . . . and told [Mr. Harris] [he] should call the police." (*Id.*) The video portrays Mr. Holliday inappropriately touching the young victim, rubbing her bottom and sticking his hands in her pockets. (*Id.* at 260.) The surveillance video was introduced at trial and published to the jury. (*Id.* at 518-41.)

Mr. Harris called police and the investigation of Mr. Holliday ensued. K.H. was interviewed at the Children's Advocacy Center ("CAC"), but she did not tell them about what happened at Harps. (*Id.* at 272.) When testifying to this at trial, she stated that she did not tell "because [she'd] gotten so used to it, that it seemed normal to [her]." (*Id.*)

The State also called Rachel Holliday and Amber Jones. (*Id.* at 349, 359.) Both women testified that Mr. Holliday had touched them inappropriately when they were children. No charges

---

[3]Respondents filed Document Number 28, which consists of the one-volume record and three-volume supplemental record in the direct appeal and the one-volume record in the state habeas appeal. Document Number 28 refers to the direct appeal, so, in this opinion, I will refer to the state habeas appeal as Document Number 28-1.

3

were filed in these cases because the statute of limitations had run. (*Id.* at 265.)

Mr. Holliday did not appeal the Court of Appeals's decision to the Arkansas Supreme Court, but he did file a Motion to Modify Original Sentence with the trial court twenty-one months after the mandate was issued. The trial court construed it as a Rule 37.1 Petition and dismissed as untimely. *Holliday v. State*, 2013 Ark. 47. Mr. Holliday timely filed a notice of appeal. *Id.* However, he did not file the record within ninety days, but he asked the court to allow him to lodge the record belatedly. *Id.* The Arkansas Supreme Court said that it was clear from the record that an appeal would not prevail. The trial court lacked jurisdiction because the Rule 37 petition was out of time, and therefore, the appellate court also lacked jurisdiction. *Id.*

In March 2013, Mr. Holliday filed a state habeas corpus petition in the Circuit Court of Lincoln County. This is the first time in the record there is any mention of a DNA rape kit. (Doc. No. 28-1 at 5.) Mr. Holliday argued that evidence of a "DNA rape test" proves he is actually innocent and "his time bar shall be excused . . ." (*Id.* at 4.) He added that because there was evidence of the rape kit, the prosecutors knowingly took "false and grossly misleading testimony of F.H." (*Id.* at 10.) However, he provided no evidence of a DNA rape kit. The petition was dismissed, and the Arkansas Supreme Court affirmed the dismissal on October 2, 2014. *Holliday v. Hobbs*, 2014 Ark. 408.

Mr. Holliday filed the current Petition (Doc. No. 2) on January 5, 2015. He again proclaimed his innocence because the alleged "DNA test rape kit" proves F.H. is still a virgin, and the prosecutors allowed F.H. to testify even though the prosecutors knew she was lying. (*Id.*) I recommended dismissal of the Petition because it was barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations. (Doc. No. 10.) The District Judge adopted my recommendation, and the case was dismissed. (Doc. Nos. 11,12.) Mr. Holliday appealed (Doc. No.

4

14), and the case was remanded to further develop the record regarding the DNA rape kit and possible prosecutorial misconduct. (Doc. No. 20.) On remand, I ordered the Respondent to address these issues, and she replied and filed the state court record in Mr. Holliday's case. (Doc. Nos. 27, 28.) Mr. Holliday responded (Doc. No. 30) and this case is ripe for decision.

## II. DISCUSSION

Given the fact that Mr. Holliday's Petition has already been found to be time-barred,[4] the only issues remaining are (1) whether the evidence of the DNA rape kit is reliable; (2) and if it is reliable, is it more likely than not that no reasonable juror would have found Mr. Holliday guilty beyond a reasonable doubt. *See Schulp v. Delo*, 513 U.S. 298 (1995). I find Mr. Holliday's assertion that there is a DNA rape kit that exonerates him completely unreliable. I have carefully reviewed the trial court record and find no evidence of a rape kit ever existing. The Respondent states, "The record is devoid of any evidence of a 'DNA rape kit.'" (Doc. No. 27 at 3.) Mr Holliday did not provide evidence of any rape kit when he filed his state habeas corpus petition nor does he now. In fact, I ordered him to provide any evidence of the rape kit. (Doc. No. 29.) Mr. Holliday responded that prior to the death of his wife in 2013, "she was able to gather information, from family members who were close to the alleged victim (F.H.), that F.H. had been given an examination while she was at either the Vista Health Clinic or the Children's Advocacy Center, which included a rape kit." (Doc. No. 30 at 1.) This vague statement, told to Mr. Holliday by someone now deceased, who heard it from "family members," is clearly not reliable. Furthermore, F.H. disclosed the abuse years after the rape occurred, and a DNA rape kit would have been futile at that time.

As for the prosecutors knowingly introducing the victim's false testimony, Mr. Holliday argues that the prosecutors "knew that it would have been medically impossible for a grown man to

---

[4]The 8th Circuit Court of Appeals made a ruling on this issue. (Doc. No. 20 at 2.)

have sexual intercourse with a child between the age of three and eight, or nine, without causing severe and irreparable damage to the vagina of the child." (*Id.* at 2.) He also claims that the prosecutors "knew that in all probability that F.H.'s testimony was a complete falsehood." As already stated, there is no reliable evidence that a rape kit exists so the prosecutor could not have known it was medically impossible for F.H. to have been raped. Furthermore, at trial, the prosecutors made it very clear to the jury that F.H. had recanted her story. They first mentioned it in opening statements (Doc. No. 28 at 233), questioned her about it extensively on direct examination (*Id.* at 325-27), and mentioned it again in closing. (*Id.* at 445.)

I find that Mr. Holliday does not provide "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial . . ." *McQuiggin v. Perkins*, 133 S.Ct. 1982, 1936 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Therefore, he cannot pass through the actual innocence gateway created in *McQuiggin*. Mr. Holliday's Petition was filed outside the AEDPA one-year statute of limitations and must be dismissed.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S.

473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, the Petition is clearly time-barred. Therefore, no certificate of appealability should be issued.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DISMISSED, and the requested relief be DENIED.

2. A certificate of appealability should not be issued.

DATED this 25th day of August, 2016.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE